# Williams v. Hayes et al. (two cases).

### (Decided June 5, 1936.)

CHESLEY A. LYCAN and FRED HOWES and J. EARL WALKER for appellant.

C. F. SEE, JR., and S. THOMPSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing in part and affirming in part.

This is an appeal from an adverse judgment of the Lawrence circuit court rendered in the above-styled consolidated suits, wherein the relief sought by appellant was in each instance denied and the actions dismissed.

The facts out of which the actions arose are, as disclosed by the rather lengthy record, that the appellees, Green Hayes, L. C. Hayes, Laura Hayes Nichols, and Alpha Hayes, committee of W. T. Hayes, are the children and heirs at law of John Hayes and Bets Hayes, while Nola Hayes, Ethel Chandler, John Davis, Willie Davis, and Willie Davis, committee of Richard Davis, are the grandchildren and heirs at law by rep-

resentation of the said John Hayes and Bets Hayes. The real estate in controversy in the first of these suits of H. W. Williams v. Green Hayes et al., is a part of the lands owned by this ancestor, John Hayes, who died intestate, leaving surviving him the above named children, together with Major Hayes and Sarah Hayes, and the named grandchildren as his heirs at law.

Major Hayes and Sarah Hayes, brother and sister of the other named children of John Hayes, lived upon their father's home place with their parents until they died, after which they continued to there live together until their own later deaths in 1929 and 1932, respectively.

It appears that the father, John Hayes, was a large landowner in Lawrence county, and that after his death, intestate, his son Major Hayes, acquired practically 1,000 acres of his land, in part by inheritance but mostly by purchase.

It further appears by the evidence that there existed in the Hayes family a tendency to mental incapacity or imbecility upon their reaching advanced age. Such was the case with the father, John Hayes, who is shown to have been adjudged mentally incompetent in the later years of his life. Also the evidence discloses a very like tendency to both physical and mental weakness in his son, Major Hayes, and that such had become his mental condition, and also in less measure that of his sister, Sarah Hayes, by the year 1922, when these transactions between the parties, out of which these suits or litigation arise, took place.

About this time it further appears that Sarah Hayes, then a spinster of mellowed maturity, who lived with her slightly older bachelor brother, Major Hayes, was wooed, won, and wed by the appellant, H. W. Williams, an elderly widower of a decidedly practical and thrifty turn of mind, as manifested by his self-serving family activities, in which it is complained he, with knowledge of their infirmities, overreached them.

Further it appears that almost immediately following this belated marriage the brother, Major Hayes, importuned his sister to return to his home and resume

her long-observed habit of caring for him and administering to his many distressing personal needs required by reason of his then condition of helpless invalidism. The sister, thus invoked, at once returned to the old home to look after her invalid brother, where she was soon followed by her husband, the appellant, Williams, who moved in and assumed the role of major-domo over this troubled and underprivileged household. Soon after this, in 1922, it appears that the afflicted brother, Major Hayes, made his will, whereby he devised all of his property to his faithful sister, Sarah Williams, with the result that the appellees, or testator's other brothers and sisters, incensed at his having made his sister, Sarah, the sole beneficiary of his estate, and interpreting his action in so doing as indicative of or due to his domination by the appellant, Williams, instituted a suit seeking to have the brother declared not of sound mind and the appointment of a committee to take charge of his property.

Upon the inquest held, Major Hayes was adjudged to be an incompetent, and one of his brothers was appointed as his committee to manage his estate.

Resentful of such action, he appealed from this judgment to the circuit court, where the proceedings were adjudged to have been void, for the reason that Hayes had not been served with summons therein, and he adjudged restored to full control of his property.

It further appears that Major Hayes' health had for some years prior been bad, and that his sister, Sarah Hayes, had advanced from her own moneys an amount of something over $3,000 to provide him with expert medical treatment and hospitalization, looking to his restoration. This hoped for result, however, was not realized, but his condition grew steadily worse, both physical and mental, until it is shown to have become one of complete and helpless invalidism, requiring the constant care and attention of nurses, who were regularly thereafter employed by the sister for him until his death in 1929.

It is further shown that the appellant, Williams, his brother-in-law, then living in his home as one of the family, also assisted somewhat in this task of administering to Major's needs, which were rated to

be of such value and extent by Williams that in 1926, claiming to have rendered 104 weeks of such service to Major, he demanded of him payment therefor at the rate of $10 a week, or $1,040, and which claim it further appears Major Hayes sought to settle on November 29, 1926, by executing to him the following note therefor:

"Note $1040.00

"Charley, Ky. Nov. 29, 1926.

"One day after date I promise to pay H. W. Williams $1040.00, one thousand and forty dollars with 6 per cent interest from date for waiting on and caring for me one hundred and four weeks, and it is understood that this note is to be paid out of my real estate I am conveying to Sarah H. Williams, and she is to sign this note for the purpose of securing the payment of this note out of the Real Estate I am conveying to her."

This note, prepared by Williams (it appears) for Hayes' execution, was by him signed by mark, witnessed by a deputy clerk, Wm. H. Johnson, and was also at the time signed by Hayes' sister, Sarah H. Williams, as she was therein directed, for the purpose of securing its payment out of the certain real estate he simultaneously conveyed her when executing the note to Williams.

Hayes was, at the time of this execution of these papers, and had been for some years prior, suffering with paralysis agitans, and was so paralyzed that it was with much difficulty that he could even make his mark to the note, and he was in fact so helpless that he could make known his wants only by signs or by feebly and with much effort speaking after his lips were massaged, in practically all instances by Mr. Williams. There is also much evidence that he was also at this time without mental capacity to execute the note.

However that may be, after the execution of this note to Williams and deed to his sister, Major Hayes died testate in November, 1929, when his will, devising all his property to his sister Sarah, was duly probated.

In July, 1932, Sarah H. Williams having died in-

testate and without children surviving her, the appellant, H. W. Williams, was appointed her administrator and proceeded to make settlement of her estate.

Also, almost immediately following her death, the appellees, her brothers and sisters, or their representatives, sued as her heirs at law for an allotment of courtesy to Williams, as her surviving husband, and a division of the deceased sister's lands among themselves, claiming that their sister, Sarah Williams, at the time of her death was the owner of the lands in question as the sole devisee thereof under the 1922 will of her predeceased brother, Major Hayes.

In this suit a life interest in a third of the lands was set apart to the appellant, Williams, and the remainder thereof apportioned between the appellees as the deceased sister's heirs at law. Also Williams, as administrator of his deceased wife's estate, filed his report of partial settlement thereof made with the special commissioner, wherein it was recited that he had paid to himself the $1,040 note mentioned supra and interest thereon, amounting to a total of $1,421.30, out of the personal estate, leaving then a net balance in his hands for distribution of $3,287.99 personal property, which he proposed to distribute one-half to himself and the remainder among the appellees, as her heirs at law.

Exceptions were filed to confirmation of this report, which were sustained by the court.

Complaining of such ruling, an appeal was prosecuted to the circuit court. Also the appellant, Williams, conceiving that a mistake had been made in his attempted administrator's settlement, in paying himself the note and interest, amounting to some $1,421 out of his wife's personal estate, filed in the circuit court an independent action thereon in equity against the appellee heirs in which he claimed that same was by its terms made a lien claim against certain lands simultaneously deeded her therewith, and which note his wife had signed as part consideration given therefor, and asked for a correction, in such respect, of his administrator's report, and that the said note be ignored in that settlement and adjudged to be a specific lien claim against the lands allotted to the appellees,

as heirs at law of his deceased wife, under and pursuant to the provisions of sections 2084 and 2089, Kentucky Statutes, making them liable for the lien debts owing by her estate upon the lands conveyed her to the extent of assets received therefrom.

These actions having been consolidated and heard together, the learned chancellor adjudged that sufficient consideration was shown to support the deed from Major Hayes to Sarah Hayes Williams, as the notes executed in part consideration therefor were witnessed by disinterested persons, ''none of whom were introduced to show that they were not in fact executed by Major Hayes to Sarah Williams. Moreover, the will of Major Hayes, the probate of which has not been appealed from, vested in Sarah Williams the title of the property in question. * * * The evidence to substantiate consideration for the execution and delivery of the note is insufficiently coupled with the physical and mental weakness of Major Hayes, and neither Major Hayes or Mrs. Williams are bound thereby. The exceptions to the claim of Williams on the note are sustained and his petition to recover on the note and his appeal from the county court are dismissed,'' with costs.

An appeal from this judgment in these consolidated actions results.

Reviewing these assignments of error, we will first consider appellant's contention that he was entitled to recover the amount of his note and interest claim, owing him by the estate of his wife, out of the lands of his wife allotted the appellee heirs in the division suit, in that his note was in fact a vendor's lien note against the lands inherited by them, and that therefore its payment allowed out of his wife's personal estate was erroneous. Sufficient answer to this is to say that the note signed by the wife was an obligation of her estate, and as such was properly paid by him out of the personal estate, as administrator thereof, and that for such reason we regard appellant's contention that it should be paid out of the real estate to be without merit.

As to appellant's second contention, that the court erred in holding that neither Major Hayes nor Mrs.

Williams were bound for the payment of their note, executed Williams for his services, upon the ground that "the evidence did not substantiate the consideration for the execution and delivery of the note, as being insufficiently coupled with the physical and mental weakness of Major Hayes," we conceive that it presents a more serious question.

This $1,040 note, upon which the appellant seeks to recover against his wife's estate, is clearly shown to have been signed by Mrs. Williams, with her brother, Major Hayes, as her note evidencing in part the consideration so promised by her for the lands then deeded and conveyed her by him, and, as such, was properly to be treated as a lien note against the lands, which was, by giving her directed signature thereto, assumed by her as a part of the consideration given her brother for the lands then conveyed her.

The $1,040 note, signed and executed by Major Hayes and Sarah H. Williams, expressly provides and recites that the grantor is "conveying to Sarah H. Williams, and she is to sign this note for the purpose of securing the payment of this note out of the real estate I am conveying her," and in accordance with such direction, and for effecting the purpose declared, she signed same.

So viewing this transaction, the appellees' contention that Sarah Williams' signing of the note, when then a married woman, to pay this debt as one then owing by her brother to her husband, was void, as a promise given by her as surety for the debt of her brother, is untenable. By thus signing, for a consideration, the note, it became her primary obligation. Bryant v. Jones, 183 Ky. 298, 209 S. W. 30.

Of course, had she merely signed the note payable to her husband for the debt of her brother, unattended with or when not a part of the further transaction simulatneously had between the parties, it clearly would have been an instance of her becoming a surety for which she would not have been bound, as being in violation of section 2127, Kentucky Statutes, prohibiting a married woman's incurring a suretyship obligation in such manner, but, when her signing of the note in question is considered in the light of the attending

circumstances under which signed, her act is thereby shown to have been but the execution by her of a note under the direction of and in effect to her brother, in part payment for the lands the note recited he was then conveying her, subject to the charge or lien impressed upon them for the payment of the note, the payment of which was assumed by her as a part of the purchase price given for the lands then being conveyed to her.

Such being our views, we conclude that the court was in error in adjudging that the deceased, Sarah Williams, was not bound by the note signed by her.

We cannot concur in the chancellor's view that the note was not supported by sufficient consideration, by reason of the evidence substantiating it being "insufficiently coupled with the physical and mental condition of its co-maker, Major Hayes." The value of Williams' service r e n d e r e d. Hayes, for which the amount of the note was charged him, was the agreed consideration for the note executed to Williams and in settlement of his claim. The sufficiency of the consideration supporting a note would not vary, as sufficient or insufficient, according to the good or bad physical and mental condition of the maker, where its obtention was not held to be fraudulent or the note made void because of the known incapacity by the payee of the maker's mental condition, permitting him to have been overreached in the transaction. Whatever may have been the degree or the state of mental incapacity on the part of Major Hayes at the time of his executing the note, it is not contended that his sister, Sarah Williams, was, at the time she also signed it, then incompetent to do so or that she then regarded her brother to be incompetent to make her a deed to the land then conveyed her. She, having accepted his deed as then validly executed to her by him as grantor and having executed the note in question, in effect to him, as part payment of its purchase price, could not at the same time be permitted to hold the land under such deed, claimed validly executed her, and yet claim that Williams' note, also executed by him at the same time, and the payment of which she assumed as a valid purchase-money note for the land conveyed her, was to be held invalid, by reason of the maker's then lack of mental capacity.

While it is true the heirs at law of Sarah Williams, when suing as such for a division of her lands, treated the lands in question as having been taken by her under the will rather than under the deed of Major Hayes, it is yet shown she took the lands here in question under her brother's deed, and thereafter continued to occupy and claim the ownership thereof during her brother's life as a grantee thereof from her brother rather than as his devisee under the will, which had not then become effective.

In such case, upon her brother's later death and the probating of his will, Sarah Williams then took thereunder only the estate devised her of which he died the owner, and when, for the reasons stated, he having previously conveyed her these lands, the same did not constitute a part of his estate which could pass under the will to his sister as devisee.

We are therefore of the impression that the court erred in holding that the note, thus executed by Major Hayes at the same time of his execution of a valid deed, was invalid, even though also at the time signed by his sister, as by him directed, to secure its payment out of the said lands conveyed her.

Such being our views, we conclude that the judgment of the learned chancellor, to the extent that it denies a recovery to the appellant out of the deceased wife's estate of the amount of the note and interest in question, is erroneous, and to such extent the judgment is reversed; but that the judgment, in further denying appellant the right to enforce the collection of the note against the lands inherited by the appellees from the deceased wife's estate, impressed with such lien, was proper, and that the note signed by the wife, representing an obligation of her estate, should, as such, be paid by appellant as administrator thereof from her personal estate.

Therefore, for the reasons stated, the judgment is reversed in part and affirmed in part.